Steven Hold was indicted for the murder of one Shelby Leon Hogue in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant guilty of the lesser included offense of manslaughter. He was sentenced to 20 years' imprisonment in the penitentiary.
The appellant does not challenge the sufficiency of the evidence and, therefore, the facts of the case will be briefly stated.
At approximately 3:00 a.m. on August 25, 1984, an argument occurred between the appellant and the deceased in front of the Jr. Food Store in Uniontown, Alabama. At some point during this argument, the deceased pulled a knife on the appellant and the appellant then shot the deceased four times with a pistol. The deceased died as a result of these wounds.
 I
The following portion of the transcript took place approximately one month prior to the trial of this case.
 "MR. BARNES: Your Honor, I have also filed a motion for approval of extraordinary expense, more particularly to have the Court approve the retention of a private investigator to assist counsel for the defendant in the investigation of the murder charge which he is faced with.
 "MR. GREENE: If the Court please, we would feel some showing would have to be — should be made as to the need for such an extraordinary expenditure. Certainly all parties could use additional help in preparing any case. But I do think the terminology is extraordinary; we think it should be some area that is in need of specific examination. And I think a showing should be made on that. We voice an objection on behalf of the state to granting same. And state that we feel the same should not be granted unless a showing of overt need is made.
 "THE COURT: What is it that you feel needs to be done?
 "MR. BARNES: Your Honor, essentially the defense would say that one of our, at least one of our and probably our main defense in this case would be that of self-defense. There is some — we would expect the evidence or testimony to show or be to the effect of that the deceased, alleged victim, Mr. Hogue, was going into his pocket or making other actions indicating that he was going into his pocket at the Jr. Food Store in Uniontown at the time of the alleged shooting and killing of Mr. Hogue by the defendant. There's also information that I have discovered in the preliminary investigations that I have made to indicate that Mr. Hogue, the victim, was a `knife-toter' and we expect to try to introduce in evidence testimony of certain witnesses in the Uniontown community who can testify concerning the reputation of the deceased in the Uniontown community for violence or whether or not he was a knife-toter. We feel like that is essential to at least one of our defenses and probably *Page 803 
our primary and main defense. We feel it is very important. In addition to that, we would allege or show that I am a sole practitioner, have other case loads that I have to attend to, other dockets and other court appearances that I must make between now and March the 4th in addition to preparing this case for trial. This case in addition to a robbery case that Mr. Hold is also involved in. I'm a one man show, so to speak; the state has several law enforcement agencies and investigators available to them. I'm just trying to get myself and the defendant, to protect his rights, on a little more equal footing with them. The State Code of Alabama provides that these types of extraordinary expenses once it's shown that it's essential to the defendant's defense or to his case or the preparation of his case, it must be approved, of course, by Your Honor; but they do make a provision that these are the types of expenses that are contemplated coming up from time to time in various cases in the State of Alabama. So I don't think it's a totally unusual request. For me to go over and try to talk with half of Uniontown between now and then and do everything else that I need to do is going to put an ominous burden upon me to adequately defend this man.
 "THE COURT: Are you saying that you want somebody to go and canvas the area or just to specific witnesses?
 "MR. BARNES: I think there are probably a couple of witnesses that if they are interviewed are going to result in several other witnesses or potential witnesses. In other words, you can't go just based on one or two people if they say yeah he toted a knife. I mean, you'll have to obviously talk to several people.
"THE COURT: Do you have some individuals in mind?
"MR. BARNES: Yes, sir.
 "THE COURT: I'll approve that as part of your expenses in trial preparation and any work you do in that regard. And if you find that there is something that needs to be done that you can't do, then we'll deal with that in specific terms.
 "MR. BARNES: So essentially you're denying my request for a private investigator?
 "THE COURT: Just for a blanket investigation; until we get to something absolutely specific. Anything else we need to cover? (R. 5-7).
The appellant asserts that he was denied the effective assistance of counsel because the trial judge would not approve funds for the defense to hire a private investigator.
The trial judge explicitly stated that he would approve funds to interview specific witnesses of whom the defense was aware. However, he denied funds for a "blanket investigation". The trial judge did indicate that he would consider further approval of funds for a private investigation if defense counsel could provide him with more specifics in this matter. The record is devoid of any further showing by defense counsel in this regard.
An accused is not deprived of due process of law when he offers "little more than undeveloped assertions that the requested assistance would be beneficial." Caldwell v. Mississippi, ___ U.S. ___, ___ n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231. See also Ake v. Oklahoma, ___ U.S. ___, 105 S.Ct. 1087,84 L.Ed.2d 53 (1985); Ex Parte Grayson, 479 So.2d 76 (Ala. 1985).
Since defense counsel failed to make a specific further showing concerning these requested funds, we find no error on this issue.
 II
The appellant contends the trial judge erred by denying his motion for reduction of bond. As the State points out in its brief after conviction, pre-trial bail questions are moot. The appellant's remedies in this regard would have been to file a writ of habeas corpus or appeal to the Court of Criminal Appeals from the trial judge's order denying a reduction of his order setting bail. *Page 804 
 III
The appellant submits that his statement made to Sheriff James Hood was improperly admitted into evidence.
First, the appellant claims that his statement was inadmissible because it was made after constant, prolonged and coersive interrogation. The record does not support this assertion.
The appellant was taken into custody at 4:30 a.m. on August 25, 1984. At 5:20 a.m., Sheriff Hood advised the appellant of hisMiranda rights and the appellant stated he understood these. (R. 163-165). With a radio operator present, Hood began interviewing him. No threats, intimidations, coercion or inducements were made or offered to him.
Prior to this time, the appellant had not been interrogated. Hood's conversation with the appellant concerning this case lasted about 10 to 15 minutes. At 6:47 a.m., two other officers began questioning the appellant about some unrelated robberies. The appellant had a rest period between the end of Hood's conversation with him concerning this case and the beginning of the questioning by the other two officers. Hood stated he was in and out during the time in which the appellant was being questioned about the robberies and he did not learn anything new about this case during that period of time. The questioning of the appellant by the other two officers ended at 10:45 a.m.
Since the appellant's statement to Hood about this case occurred at the beginning of this interrogation process and lasted less than 15 minutes, we fail to see how this statement was the product of a lengthy or overbearing interrogation.
Secondly, the appellant contends that his statement to Hood was inadmissible because Hood made a statement to the appellant which implied he would be better off if he confessed. Hood emphatically denied that he made any statement to this effect. Certainly, if the trial judge believed that such a statement had been made, he would not have allowed the appellant's statement into evidence. In fact, the trial judge suppressed another statement made by the appellant to another officer because the officer had made a statement of this nature. Shewey v. State, 48 Ala. App. 730,267 So.2d 520 (1972); Bills v. State, 49 Ala. App. 726, 275 So.2d 706
(1973).
Thirdly, the appellant contends his statement was inadmissible because he had consumed a large amount of alcohol prior to the making of the statement. Hood testified that, although the appellant smelled of alcohol, he did not slur his speech or stagger. Hood testified that he did not find that the appellant's level of intoxication rendered him incapable of communicating.
The appellant has failed to present sufficient evidence to establish the degree of intoxication necessary to render his statement inadmissible. Tice v. State, 386 So.2d 1180
(Ala.Crim.App. 1980); Scott v. State, 333 So.2d 619
(Ala.Crim.App. 1976); Bedingfield v. State, 47 Ala. App. 677,260 So.2d 408 (1972).
Hood testified that the appellant was advised of his Miranda
rights, stated that he understood these and read a waiver of those rights prior to his statement.
The appellant indicated he understood those rights, signed the waiver and agreed to give a statement. No promises, threats, coercion, hopes of reward or other inducements were made or offered to the appellant in order to obtain his statement.
In light of this evidence, we find that the trial court was correct in admitting the appellant's statement into evidence.Raines v. State, 428 So.2d 206 (Ala.Crim.App. 1983); Parker v.State, 351 So.2d 927 (Ala.Crim.App. 1977); cert. quashed351 So.2d 938 (Ala. 1977).
Our review of this record reveals no error. The judgment below is, therefore, affirmed.
AFFIRMED.
All the Judges concur. *Page 805