Julia Tinsley was charged in a two-count indictment with the unlawful sale of marijuana to one Roger Jones, contrary to the provisions of § 20-2-70, Code of Alabama 1975 as amended. The jury found her "guilty of the sale of controlled substances as charged in Counts I and II of the indictment".
Following a sentencing hearing the trial judge set sentence at five years' imprisonment under each count, the two sentences to run concurrently.
Roger Jones testified that he was employed in the ABC Enforcement Division of the State of Alabama. He stated that in this capacity he did undercover drug investigative work. Mr. Jones indicated that he was called to investigate cases in the Chilton County area during the Spring of 1985. On two occasions, on April 12 and April 13, 1985, he went to Mrs. Julia Tinsley's store in the city of Clanton. He testified that ABC Agent Jimmy Lecroy was with him and that Lecroy drove him to the store. On the first date he arrived there it was about 7:00 p.m., and still somewhat light. He stated that they were driving a 1975 silver T-Bird.
Jones approached Julia Tinsley and told her he needed two "nickel bags". He gave her a ten dollar bill. He stated that she walked out the back of the store into another building, which may have been her residence, and returned a short time later with two small manila envelopes.
He stated that the building was only about ten feet from the store which sold canned goods, candy and various items of general merchandise.
The following day he approached Julia Tinsley and told her that he wanted to buy the half ounce of marijuana that he had discussed with her the night before. On this occasion she also sold him two small bags for which he paid her $10.00.
The first marijuana was marked by Agent Jones and delivered by him to Mr. Benny Mims, the Chief Deputy Sheriff of Chilton County at the Holiday Inn later that night.
The following day he delivered the marijuana purchased from Mrs. Tinsley to Mr. Charlie West, an ABI undercover agent.
Agent Jones made a positive in-court identification of the appellant as the party who sold him the marijuana on each of the two dates in question. He described the appellant as being a black female, about 45 *Page 1006 
years of age, 5' 6" tall, 125 pounds, with black hair and brown eyes and that she wore black slacks with a multi-colored flowered blouse.
The marijuana purchased by Agent Jones was subsequently delivered to Arnold Mitchell of the Alabama Department of Forensic Sciences who had analyzed drugs on many occasions. He stated that the drugs in question were marked and delivered to him by Charles West of the Alabama Bureau of Investigation. He stated that, following examination of all four packets which were delivered to him by Mr. West, he determined the packages to contain marijuana or Cannabis sativa L.
Following the conclusion of the State's case, the appellant made a motion to exclude and a motion for a directed verdict, both of which were overruled.
Julia Tinsley testified that she worked as a licensed insurance agent for Southern Security Insurance Company out of Birmingham. She also stated that she operated a small store in the city of Clanton and that she had run for Place No. 3 on the City Council of that city.
She stated that she heard the testimony of Agent Jones and that she had never met him or seen him in her life. She testified that she had been at Victory Land Race Track on the night of April 12, 1985 and produced a ticket from that track to show that she had bet on a race there that evening. She stated that she had left the store in the care of someone else while she attended the races at Victory Land. She also denied being at the store on the following day, April 13, and that she had not seen nor sold any marijuana to Agent Jones. She stated that she was divorced from her former husband, John Tinsley.
Judy Tinsley then presented the testimony of several citizens who testified as to her good character and reputation for truth.
 I
The appellant contends that the trial court erred in overruling his motion for judgment of acquittal. She also asserts that her motion for a directed verdict contending that the State failed to prove a prima facie case, when tested by such motion, and her motion for new trial challenging the weight and sufficiency of the State's evidence, should have been granted.
Agent Jones had been directed to the appellant's place of business by Agent Jimmy Lecroy. Lecroy described the appellant's appearance before Agent Jones entered the store.
At trial Agent Jones made a positive in-court identification of Julia Tinsley as being the party who sold him marijuana on the night of April 12, 1985 shortly after 7:00 p.m. Jones indicated that she sold it to him a second time, two bags on each occasion, at about 2:30 on the following afternoon when he returned to the store. The four bags of marijuana were marked by Agent Jones and delivered to his superiors who, in turn, delivered the four bags to the Department of Forensic Sciences for examination. The marijuana was there tested and found to be exactly as described, Cannabis sativa L. See Haynes v. State,54 Ala. App. 714, 312 So.2d 406, cert. denied, 249 Ala. 758,312 So.2d 414 (1975).
In view of the above testimony, we are of the opinion that the trial judge properly overruled the appellant's motion for judgment of acquittal and for a directed verdict, as well as his motion for new trial, each challenging the weight and sufficiency of the State's case. Collier v. State,473 So.2d 1179 (Ala.Crim.App. 1985), Baker v. State, 477 So.2d 496
(Ala.Crim.App. 1985), Grice v. State, 481 So.2d 449
(Ala.Crim.App. 1985).
 II
The appellant calls our attention to the following colloquy which occurred during the voir dire examination of prospective jurors just before the trial of this cause. We quote the following colloquy which appears on R. pages 13-15 of the transcript of this proceeding:
 "MR. CHAMBLEE: Have any of you ladies and gentlemen — and this is my last question — ever run for political office in the City of Clanton?
(No response.)
 "MR. CHAMBLEE: Or held a political office in the City of Clanton? *Page 1007 
"PJ: City Clerk.
"MR. CHAMBLEE: What was your name?
"PJ SWANNER: Faye Swanner.
"PJ: Does it count if your husband is?
"MR. CHAMBLEE: Yes, ma'am.
"PJ: My husband.
"MR. CHAMBLEE: And your name?
"PJ MELTON: Lorene Melton.
"MR. CHAMBLEE: And what was he?
"PJ MELTON: Tax Collector.
"MR. CHAMBLEE: Anyone else?
"(No response.)
"MR. CHAMBLEE: Either husband or —
"PJ: My husband.
"MR. CHAMBLEE: Thank you.
 "MR. THORNTON: Judge, I have one more I would like to ask.
"THE COURT: All right.
 "MR. THORNTON: Ladies and gentlemen, is there anyone who voted for Ms. Tinsley last year in the city council election? Anyone that voted for her in the last city council election?
"Mr. Lane, is that right?
"PJ LANE: Yes.
"MR. THORNTON: That's all, Judge.
 "(Counsel and the circuit clerk struck the jury without the presence of the court reporter.)
 "MR. CHAMBLEE: The defendant at this time, Your Honor, would ask the state — the Court dismiss the instance charges against this defendant. Twice the indictment has alleged on the following ground that the state has systematically struck the blacks from the venire in such that we feel that the defendant cannot get a fair and impartial jury of her peers under the particular charges as filed by the state in this particular case. We feel that her constitutional rights have been violated as a result thereof her right to a fair trial by jury, and we would respectfully request the Court to dismiss this instant action as it applied today.
 "MR. THORNTON: Your Honor, we would like to respond.
"THE COURT: All right.
 "MR. THORNTON: Your Honor, the state responds in saying that we did not systematically strike based on race. During the voir dire — there were three blacks on the panel — during voir dire one black said he that he voted for her in the last election. Another black said that she traded at her store. The other one was not removed because of race.
"THE COURT: Right.
"MR. THORNTON: There was no system.
"THE COURT: Okay. I am going to deny your motion.
"MR. CHAMBLEE: Thank you."
Counsel for the appellant calls our attention to the very recent case of Batson v. Kentucky, 476 U.S. ---,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Counsel argues that under this decision this cause should be reversed for a new trial based on the above colloquy. We do not agree.
See Griffith v. Kentucky, --- U.S. ---, 106 S.Ct. 2274,90 L.Ed.2d 717 (1986) and Brown v. United States, --- U.S. ---,106 S.Ct. 2275, 90 L.Ed.2d 718 (1986).
This court is of the opinion that we need not await the United States Supreme Court's determination of the issue pending in the foregoing cases. The colloquy hereinabove quoted clearly establishes that there was no pattern or practice to the District Attorney's strikes of black members of the venire as shown by the above colloquy.
In view of the foregoing, we do not believe there has been an infringement of the appellant's constitutional rights. This court is of the opinion that the District Attorney here articulated a "racially neutral explanation" with reference to the use of his peremptory strikes.
For the foregoing reasons, we are of the opinion that this cause is due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 1008