[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1146 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1147 
Jackie McLeod was charged in four separate indictments with the unlawful distribution of cocaine in violation of Ala. Code § 13A-12-211 (1975). On motion of the State, these indictments were consolidated for trial. A jury found McLeod guilty in all four cases and he was sentenced as a habitual felony offender to life imprisonment in each case. McLeod represented himself at trial and is appearing pro se on appeal.[1] He raises eleven issues in this appeal.
 I
McLeod contends that he did not voluntarily and intelligently waive his right to counsel because he was not informed of the dangers and disadvantages of self-representation prior to being allowed to proceed pro se.
Tom Motley was originally appointed to represent McLeod at trial and appeared with McLeod at his arraignment on March 10, 1989. On March 28, 1989, McLeod filed a pro se "Motion to Dismiss Court-Appointed Attorney." A hearing was held on this motion on April 17, 1989. Both McLeod and Motley were present at this hearing, at which the following occurred:
 "THE COURT: Mr. McLeod, you have made a motion in these cases to dismiss your court appointed attorney, Tom Motley, and have asked to represent yourself. Of course, I want it to be very clear about whether or not you should represent yourself, or whether or not that is what you really want to do. You have filed a written motion, and previously in previous cases [sic], the Court had appointed Mr. Motley to be your attorney to assist you in your defense. Now you want to dismiss him. Are you sure that is what you want to do?
"MR. MCLEOD: Yes, sir.
"THE COURT: You want to represent yourself?
"MR. MCLEOD: Yes, sir.
 "THE COURT: Do you understand that it would be more to your best interest to be represented by an attorney such as Mr. Motley; do you understand that?
"MR. MCLEOD: Yes, sir.
 "THE COURT: You know that in another case where you represented yourself, you later on filed a motion for a new trial on the basis that you did represent yourself?
"MR. MCLEOD: Yes, sir.
 "THE COURT: Do you still want to represent yourself?
"MR. MCLEOD: Yes, sir.
 "THE COURT: You waive the right to a court-appointed counsel to represent you?
 "MR. MCLEOD: I waive the right for a court-appointed attorney to represent me and stand by.
 "THE COURT: I recognize for a layman — your expertise for a layman. I still say it would be best for Mr. Motley to represent you.
"MR. MOTLEY: If I could for the record?
"THE COURT: Go ahead.
 "MR. MOTLEY: Mr. McLeod and I talked about this. I explained to him *Page 1148 
what my theory would be and how I would like to proceed in putting on evidence and defending him. Mr. McLeod had definite ideas of what he thinks should be taken in front of the jury than I do — differing ideas than I do. After going on and telling him the pitfalls of going ahead with his case this way, he still — he is still deciding it would be in his best interest to go ahead and proceed and let himself put on his evidence in the manner which he feels would show the jury his innocence of these charges. For that reason, I concur, because I really don't agree with the way Mr. McLeod would put on his defense.
 "MR. MCLEOD: The main reason is in the past Mr. Motley did a good job. He won a case for me, and I appreciated that.
 "Here the problem is now: I haven't seen Mr. Motley since we had arrangements [sic]. That was March tenth, and I haven't been able to talk to Mr. Motley until Friday night at 10:30 at the county jail. You tell me how we're going to put on a defense and have a jury trial when we don't even know the date.
 "We have four cases here on drugs. Mr. Motley will tell you that just a while ago he gave me a copy of the preliminary hearing transcript which will tell the date the drugs were sold. How can we have a jury trial today[2] when he haven't [sic] been able to talk to me about the alibi witnesses, when the D.A. didn't give him the date of the alleged sale, which is not in the indictment? How can I put on an alibi defense with Mr. Motley, and he ain't got nothing to go with?
 "THE COURT: I know Mr. Motley is an able trial lawyer —
 "MR. MCLEOD: (Interposing) Well, Your Honor —
 "THE COURT: (Interposing) Just a minute. We are taking down all kinds of discussions.
 "MR. MCLEOD: That is the reason I want to try — the way — all I can do is use fancy words in front of the jury. So far we ain't — we haven't subpoenaed no witnesses for trial.
 "THE COURT: Let me go ahead and rule on your motion. We have gone through all of this. It appears to me that you intelligently know what you're doing about waiving counsel.
"MR. MCLEOD: Yes, sir.
 "THE COURT: Although I have told you that it is generally not a good idea, but I will honor your request and relieve Mr. Motley and grant your motion to proceed pro se as your own attorney. Of course, you'll be required to operate, generally, within the same rules of evidence like everybody else. You have appeared in the past to have a lot of knowledge about that.
 "I will abide by your wishes, and I will grant your motion to represent yourself pro se. I want to make sure that is what you want to do.
 "MR. MCLEOD: Yes, sir, that is what I want to do."
(Emphasis and footnote added.)
An accused has a constitutional right to represent himself where his decision to proceed without counsel is voluntarily and intelligently made. Faretta v. California, 422 U.S. 806,95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In determining whether an accused's waiver of counsel was in fact voluntarily and intelligently made, some courts "require that a trial court expressly admonish a defendant of the dangers and pitfalls of self-representation." Teske v. State, 507 So.2d 569, 571
(Ala.Cr.App. 1987).
Alabama, however, does not subscribe to this view. Instead, our courts follow the modern trend which "require[s] only that it appear from the record as a whole that a defendant's waiver of counsel and decision to represent himself were knowing and intelligent." Teske, 507 So.2d at 571. Under this approach, "the focus of the inquiry is not on the information revealed by the court but on the knowledge of the accused, as shown by thecircumstances surrounding the waiver." Id. (Emphasis added.) Although recognizing that "express, on-the-record advice of the dangers and risks *Page 1149 
of self-representation is . . . highly desirable," id. at n. 1,Teske makes it clear that as long as a knowing and intelligent waiver is apparent from the record, it need not emerge from a colloquy in which the defendant is advised by the trial judge of the dangers and disadvantages of self-representation. See also 2 W. LaFave and J. Israel, Criminal Procedure § 11.3(b) at pp. 30-33, § 11.5(c) at pp. 44-47 (1984).
While the trial court in the present case did not advise McLeod of the specific "dangers and risks of self-representation," he did engage in a lengthy discussion with McLeod during which he twice informed McLeod that it would be in his best interests to be represented by counsel. Even in granting McLeod's motion, the trial court stated that self-representation was "generally not a good idea." Moreover, the record reveals that McLeod was represented by counsel prior to trial; that he had previous experience with criminal proceedings, including a prior trial in which he represented himself;[3] that he had some knowledge of basic trial procedure and understood that he would be required to comply with the rules of evidence; that he was aware of available defenses; and that he desired to represent himself in these cases because he did not agree with the manner in which appointed counsel intended to present his case. All of these factors are indicative that McLeod's waiver of counsel was in fact voluntarily and intelligently made. See Fitzpatrick v.Wainwright, 800 F.2d 1057, 1066-67 (11th Cir. 1986). We also note that prior to questioning the venire, McLeod introduced himself and stated:
 "I'm defending myself in this case because that's what the Constitution of the United States guarantees: a right to represent myself if I choose to. The Court have [sic] offered me a lawyer, but I rejected the lawyer for my own personal reasons. I want y'all to know that that's my right, and I hope that you won't find me guilty because I'm representing myself."
(Emphasis added.)
In view of all the circumstances of this case, including the fact that McLeod had represented himself in a prior trial and suffered a conviction which resulted in a sentence of imprisonment for life as a habitual felony offender, we are of the opinion that McLeod had firsthand knowledge of the dangers and disadvantages of self-representation. We find that the trial court, which was clearly aware of McLeod's prior self-representation, did all that was "necessary relative to the circumstances to determine that [McLeod] made a knowing and intelligent [waiver]" of his right to counsel. People v.Longwith, 125 Cal.App.3d 400, 408, 178 Cal.Rptr. 136, 140
(1981), quoted in Teske, 507 So.2d at 571. See also King v.State, 55 Ala. App. 306, 307-09, 314 So.2d 908, 909-11, cert. denied, 294 Ala. 762, 314 So.2d 912 (1975) (although the record showed no questioning of defendant by trial court on the subject, defendant's waiver of counsel was found to be voluntarily and intelligently made where there were several references in the transcript that indicated that defendant had elected to proceed without counsel, and defendant was "certainly not a newcomer to the judicial processes").
 II
McLeod asserts that he was denied due process of law by the trial court's denial of his request for funds to obtain independent testing of the cocaine.
A "Motion for Independent Testing" was filed by defense counsel Motley on March 27, 1989. This motion, which requested both a sample for testing and funds for such testing, was originally denied on April 14, 1989, as untimely. On April 17, 1989, the trial court entered an order directing the State to furnish McLeod with a sample for independent testing to be conducted at McLeod's expense. McLeod then filed a *Page 1150 
pro se request for funds for the testing. This request was denied on April 21, 1989.
A defendant charged with a drug-related offense is entitled, under Rule 18.1(c), A.R.Cr.P.Temp., and upon proper motion, to a sample of the alleged controlled substance in order that he may obtain independent testing of the substance. See Moton v.State, 524 So.2d 381 (Ala.Cr.App. 1988); Ware v. State,472 So.2d 447 (Ala.Cr.App. 1985). However, neither Moton nor Ware
stands for the proposition that an indigent defendant is automatically entitled to funds for such testing. The defendant must demonstrate that there is a need for such testing in order to obtain funds therefor. See Tarver v. State,500 So.2d 1232, 1245 (Ala.Cr.App.), affirmed, 500 So.2d 1256 (Ala. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685
(1987) (where defendant made no "showing of the need for a forensic expert" to examine fingerprints on a beer can, he "was not unconstitutionally denied the assistance of experts"); Holdv. State, 485 So.2d 801, 803 (Ala.Cr.App. 1986) (where defendant failed to make a showing of need for private investigator, trial court's denial of defendant's request for funds to hire same did not violate defendant's due process rights). Cf. Caldwell v. Mississippi, 472 U.S. 320, 323 n. 1,105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985) (where defendant's request for appointment of a criminal investigator, fingerprint expert, and ballistics expert "offered little more than undeveloped assertions that the requested assistance would be beneficial," the Supreme Court found "no deprivation of due process" in the trial court's denial of the request).
The "Motion for Independent Testing" filed by attorney Motley merely alleged that the testing was required "[i]n order to present an effective defense." McLeod's pro se motion contained the additional assertion that the testing was necessary "to determine whether or not the alleged cocaine have [sic] been altered." McLeod claimed in his motion that the cocaine had been tampered with while in the evidence locker of the Houston County sheriff's department. In support of this motion, McLeod attached a copy of a newspaper article reporting thetheft of evidence from this locker. There is nothing in the article that indicates there was any tampering with the evidence contained in the locker. In any event, the testimony of the State's witnesses at trial established a clear chain of custody for the cocaine acquired from McLeod. According to these witnesses, this cocaine was never in the Houston County sheriff's evidence locker, but was retained by drug task force agents of the Alabama Beverage Control Board both prior to and following testing by the substance analysts at the Alabama Department of Forensic Sciences.
Moreover, McLeod does not contend that "there was any fraud or mistake on the part of [the State's] analysts or the tests that they performed," Cowart v. State, 488 So.2d 497, 503
(Ala.Cr.App. 1985), overruled on other grounds, McClendon v.State, 513 So.2d 102, 106 (Ala.Cr.App. 1986), or that "the State's expert was biased or incompetent," Bostic v. State,173 Ga. App. 494, 495, 326 S.E.2d 849, 851 (1985). During his cross-examination of David Thorne, one of the State's substance analysts, it was revealed that McLeod and Thorne had attended school together some 20 years previously. McLeod attempted to insinuate that the two had had "personal problems" at that time, but Thorne stated that he did not remember any, nor did Thorne have any recollection of a fight which McLeod asserted took place between Thorne's brother and himself. We note that Thorne analyzed the cocaine in only one of the four cases against McLeod. Joseph Saloom performed the analyses in the remaining three cases.
McLeod had the opportunity to thoroughly cross-examine both the State's substance analysts. Aside from his unsuccessful attempt to show bias on the part of Thorne, he asked no questions indicating fraud, mistake, or incompetence in the State's testing of the cocaine. In view of these facts and the fact that McLeod offered an alibi defense, we find no due process violation in the trial court's denial of his request for funds for independent testing. Bostic, *Page 1151 173 Ga. App. at 495, 326 S.E.2d at 851 (no error in trial court's denial of defendant's request for funds to obtain an independent analysis of cocaine sold by defendant in view of facts that defendant presented an alibi defense, that he failed to show how he was harmed by the trial court's action, that he made no contention that the State's analyst was biased or incompetent, and that he was permitted to thoroughly cross-examine the State's analyst); Bright v. State,293 So.2d 818, 822 (Miss. 1974) (no abuse of discretion in trial court's denial of indigent defendant's request for independent analysis of marijuana at county's expense because "there was no issue as to whether or not the substance was contraband; but, rather, the issue was whether or not the defendant sold any substance, since his defense was alibi"). See Berry v. United States,528 A.2d 1209, 1210-11 (D.C.App. 1987) (finding no due process or equal protection violation in trial court's refusal to appoint a chemist to assist the defense where defendant "made no showing in his pretrial motion or in cross-examination at trial that the independence and general reliability of the [government's] chemists . . . would not result in an accurate test of the substances seized from [defendant's] apartment");Hubbard v. State, 173 Ga. App. 127, 128, 325 S.E.2d 799, 801-02
(1984) (no abuse of discretion in trial court's denial of indigent defendant's request for funds to obtain independent testing of phencyclidine "[g]iven the absence of any indication that the state's expert was incompetent or biased or that the chemical analysis performed by him might otherwise be unreliable"). Cf. United States v. Fince, 670 F.2d 1356,1357-58 (4th Cir.), cert. denied, 456 U.S. 982, 102 S.Ct. 2254,72 L.Ed.2d 860 (1982) (finding no error in trial court's denial of defendant's request for a chemist to analyze cocaine in order to develop "isomer defense" which court deemed to be without merit).
 III
In an argument related to Part II, McLeod maintains that the trial court erred in denying his request for the appointment of an investigator to assist in the preparation of his defense. He maintains that the trial court's action denied him due process, equal protection, and the right to cross-examine witnesses.
McLeod filed a pro se motion dated April 24, 1989, which, in its title, requested the appointment of an investigatoror greater access to the jail telephone and prisoners' library for McLeod himself. In the body of this motion, McLeod sought the use of the jail telephone between the hours of 8:00 a.m. and 8:00 p.m. and one hour of library time every day. There was no specific request for an investigator in the body of this motion. On April 27, 1989, the trial court entered an order directing the sheriff "to allow [McLeod] at least 30 minutes phone time every other day prior to trial for the purpose of contacting witnesses" and "at least one hour law library time every other day prior to trial." Although placing reasonable restrictions thereon, the trial court clearly granted McLeod's alternative request. In any event, McLeod made no showing of the necessity of an investigator, and his request for the appointment of same was therefore properly denied. See Caldwellv. Mississippi, 472 U.S. at 323 n. 1, 105 S.Ct. at 2637 n. 1;Hold v. State, 485 So.2d at 803. Even on appeal, McLeod merely asserts that an investigator was necessary so that he might adequately prepare his defense, and he has not set forth any specific reasons demonstrating this necessity. Much of our discussion in Part II above is also applicable here and we find no error in the trial court's action with regard to this motion.
 IV
There was no error in the consolidation of the four indictments for trial.
Rule 15.3(b), A.R.Cr.P.Temp., permits the consolidation of indictments if "the offenses could have been joined in a single indictment." Under Rule 15.3(a), offenses may be joined in an single indictment if they: "(i) are of the same or similar character; or (ii) are based on the same conduct or are otherwise connected in their commission; or (iii) are alleged to have been part of a common scheme or plan." Each of the *Page 1152 
indictments against McLeod charged him with the unlawful distribution of cocaine under Ala. Code § 13A-12-211 (1975). Thus, the four offenses were clearly of the same character and could have been joined in a single indictment. See Thomas v.State, 508 So.2d 310 (Ala.Cr.App. 1987) (two indictments for felony possession of marijuana were properly consolidated for trial); State v. Feeback, 414 So.2d 1229 (La. 1982) (four counts of possession of a controlled substance and one count of possession with intent to distribute were of similar character and were properly joined under a Louisiana statute similar to Rule 15.3(a)).
In King v. State, 518 So.2d 880, 887 (Ala.Cr.App. 1987), we noted that "joinder of offenses on [the ground that they are of the same or similar character] puts the defendant in a position most vulnerable to prejudice." Here, we find no undue prejudice to McLeod from the consolidation of the four indictments. "[T]he evidence for each crime was simple and distinct and was carefully presented to the jury by the state according to the dates on which the offenses occurred." Feeback,414 So.2d at 1233. The trial court carefully instructed the jury that there were four separate cases and four separate verdict forms, and we are satisfied that "the jury could compartmentalize the evidence and apply the law intelligently to each offense." Id.
 V
McLeod contends that the trial judge should have disqualified himself in these four cases.
It appears from attachments to McLeod's motion to recuse that, prior to this trial, McLeod had filed two separate pro se actions under 42 U.S.C. § 1983 in federal district court. Several law enforcement officers and various other persons were named as defendants in these actions. Circuit Judge Edward Jackson, who presided over the instant trial, was named as a defendant in one of the § 1983 actions. In Case Number 88-T-1023-N, McLeod alleged that Judge Jackson had violated his constitutional rights by "using personal discrimination . . . in reaching his decision to deny [McLeod's] request for [a judgment of] acquittal" in a prior drug case. This complaint sought monetary damages from all the defendants.
McLeod asserted at trial and asserts on appeal that Judge Jackson should have recused himself under Canon 3.C(1), subsections (a) and (d)(iii), Alabama Canons of Judicial Ethics, because he had knowledge of the facts of the case and was likely to be called as a witness. This argument is apparently connected to McLeod's § 1983 action and his desire to question witnesses about that action. See Part X below.
Canon 3.C(1) provides in pertinent part:
 "A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 "(a) He has . . . personal knowledge of disputed evidentiary facts concerning the proceeding;
". . . .
 "(d) He or his spouse, or a person within the fourth degree of relationship to either of them, or the spouse of such a person:
". . . .
 "(iii) Is to the judge's knowledge likely to be a material witness in the proceeding."
(Emphasis added.) Subsection (a) of Canon 3.C(1) is obviously directed at the situation where the trial judge has some independent extra-judicial knowledge of the facts of the casepending before him. See Callahan v. State, 557 So.2d 1292, 1309
(Ala.Cr.App.), affirmed, 557 So.2d 1311 (Ala. 1989). There has been no allegation that Judge Jackson had any independent knowledge of the facts regarding the instant cocaine charges. Even if the § 1983 action were somehow relevant to the present cases, it is clear that whatever knowledge Judge Jackson may have had about that action was obtained during the course of his performance of judicial duties.
In Callahan, 557 So.2d at 1307-08, this Court defined "material witness" under Canon 3.C(1)(d)(iii) as " 'a witness who gives testimony going to some fact affecting *Page 1153 the merits of the cause and about which no other witness mighttestify.' " (Quoting Wingate v. Mach, 117 Fla. 104,157 So. 421, 422 (1934).) It is clear that Judge Jackson did not fall within this definition. Thus, there was no reason for Judge Jackson to disqualify himself on the grounds asserted by McLeod.
Moreover, we note that the mere filing of a § 1983 action against a judge by a litigant in an action before him does not automatically require the judge to recuse himself. Alabama Judicial Inquiry Commission, Advisory Opinion 86-273, September 29, 1986:
 "It is axiomatic that a litigant cannot control pending litigation by the mere filing of a 42 U.S.C. [§] 1983 action against the trial judge. To base disqualification on the mere filing of such an action would create chaos in the judicial system and could prevent cases from ever being tried. Thus, each case of this nature must be considered on its own merits and in those instances where . . . it is easily determined from the face of the pleadings that the [§ 1983] action is completely frivolous, the mere filing of the action does not disqualify the trial court judge."
Id. There was no error in the trial judge's refusal to disqualify himself from these cases on the ground that McLeod had filed a § 1983 action against him.
 VI
Prior to the qualification of the venire, McLeod made an oral request for continuance based on several grounds. After a discussion outside the presence of the venire, the trial court denied the motion. On appeal, McLeod asserts that the trial court erred in denying the motion on the ground that he needed to subpoena additional alibi witnesses.
A motion for a continuance is addressed to the sound discretion of the trial court, and his decision will not be overturned on appeal absent a showing of abuse of that discretion. Fletcher v. State, 291 Ala. 67, 68, 277 So.2d 882,883 (1973). Where a motion for continuance is made on the ground that a witness or evidence is absent, however, the motion should be granted if the following criteria are met:
 "(1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence."
Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala. 1986), quoted inReese v. State, 549 So.2d 148, 151 (Ala.Cr.App. 1989).
During the discussion outside the presence of the venire, McLeod asserted that he had requested that seven witnesses be subpoenaed, but that these witnesses were not present. Although he asserts on appeal that he was denied the opportunity to subpoena additional alibi witnesses, he did not during the discussion at trial indicate that these witnesses were alibi witnesses nor did he make any offer of proof regarding their expected testimony. Thus, he did not meet the first criterion of the Saranthus test. Moreover, during the prosecutor's voir dire of the venire, McLeod stated on the record that "I waived all the witnesses except Ricky Green, Terry Hill, and Mary Bass. All the other — Keith Lynn — all of my other witnesses have been waived." McLeod "never redirected the court's attention to the absent witness[es] at any later point in the trial and we must assume that he therefore acquiesced in the trial court's action." Williams v. State, 506 So.2d 368, 370
(Ala.Cr.App. 1986), cert. denied, 506 So.2d 372 (Ala. 1987).
We note that McLeod called two alibi witnesses, George Green and Terry Hill, both of whom testified that McLeod was playing cards with them on each of the dates of the alleged offenses. Any other alibi witnesses would have presumably testified to the same effect. Thus, such witnesses would have been merely cumulative and could have been excluded by the trial court on that ground:
 "The admission or exclusion of cumulative evidence rests within the sound discretion of the trial judge. Allen v. State, 290 Ala. 339, 343, 276 So.2d 583, 586 (1973). This is true even where the cumulative *Page 1154 
evidence which is excluded relative to the defense being presented. United States v. Gregory, 730 F.2d 692, 705 (11th Cir. 1984), cert. denied, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985)."
Gainer v. State, 553 So.2d 673, 684 (Ala.Cr.App. 1989). As inBarton v. State, 494 So.2d 943, 949-50 (Ala.Cr.App. 1986), we find no abuse of discretion in the denial of a continuance requested so that the defendant might procure absent witnesses whose testimony would be cumulative. See also United States v.Wuagneux, 683 F.2d 1343, 1355-56 (11th Cir. 1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (in view of the fact that a trial court "may limit the number of defense witnesses without depriving a defendant of due process, particularly when there is no offer of proof as to the substance of the proposed witness' testimony and its materiality, or when the testimony would be cumulative or irrelevant . . . a request for continuance in order to procureadditional witnesses is a matter within the sound discretion of the [trial] court, and when the request is denied [a defendant] must show an abuse of discretion and specific, substantial prejudice in order to obtain relief") (emphasis added).
 VII
McLeod contends that the prosecutor exercised his peremptory jury strikes in a racially discriminatory manner and, therefore, the trial court erred in denying hisBatson[4] motion.
The record reveals that the prosecutor used two of his eight peremptory strikes to remove blacks from the venire and that two blacks remained on the jury that ultimately heard this case. McLeod made a timely Batson motion after the jury was struck. The trial judge did not require McLeod to establish a prima facie case of discrimination, but simply requested the prosecutor to state his reasons for striking the black venire members.
The prosecutor responded that he struck juror Number 59 because a deputy sheriff had informed the district attorney's office that this person was "dealing in drugs, but he just hasn't been caught yet." As to the other black venire member who was struck, the prosecutor stated:
 "[Number 46] was struck because he served on the case of Henry McArthur which was not a cocaine case. It was a possession of marijuana case which resulted in a verdict of not guilty. And [Number 46] indicated in voir dire in response to the defendant's questions that he had served on a cocaine jury month before last and that the verdict was guilty.
 "He's incorrect. It was a possession of marijuana case and the verdict was not guilty. I tried the case before Judge Denny Holloway. Tom Motley was the defense attorney, and I do remember [Number 46] being on the jury. And I remember the case being a good case, a case in which I thought the jurors should have convicted. In fact, in my notes here it says, '289, State versus Henry McArthur, POM,' meaning possession of marijuana, 'dash, good case, dash, not guilty.'
 "And I made that note, or rather, I gave that note to one of the secretaries in our office immediately following the verdict of that case so we could keep a record of those twelve jurors who rendered that verdict in that case. I thought it was a strong case, that they should have convicted him. He was struck for that reason."
The trial court denied McLeod's Batson motion, stating that he "accept[ed] the State's reasons for striking those jurors."
When a defendant makes a timely Batson motion and establishes a prima facie case of discrimination, the prosecution "must then come forward with a race-neutral explanation as to why peremptory challenges were used to exclude members of a minority." Harrell v. State, 555 So.2d 263, 268 (Ala. 1989) (footnote omitted). Where, as in this case, the trial court requires the prosecutor to state his reasons for his peremptory strikes without first requiring the *Page 1155 
defendant to establish a prima facie case of discrimination, this Court will review the reasons given by the prosecutor and the trial court's ultimate decision on the Batson motion without any determination of whether the defendant met his burden of proving a prima facie case of discrimination. SeeCurrin v. State, 535 So.2d 221, 223 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala. 1988). The trial court's decision with regard to a Batson motion will be reversed only if that decision is clearly erroneous. Ex parte Branch, 526 So.2d 609,625 (Ala. 1987).
Where the prosecutor is required to explain his peremptory strikes, he must offer "a clear, specific, and legitimate reason for the challenge which relates to the particular caseto be tried, and which is nondiscriminatory. Batson,476 U.S. at 97, 106 S.Ct. at 1723. However, this showing need not rise to the level of a challenge for cause." Ex parte Branch,526 So.2d at 623.
The prosecutor's reason for striking juror Number 59 — that the individual was connected with or engaged in criminal activity — was clearly race neutral. E.g., Allen v. State,555 So.2d 1185, 1187 (Ala.Cr.App. 1989) (juror's "family was known by law enforcement officers to be involved in 'drug dealings' "); Lynn v. State, 543 So.2d 704, 709 (Ala.Cr.App. 1987), affirmed, 543 So.2d 709 (Ala. 1988), cert. denied, ___ U.S. ___, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989) (venire member was "reputed to be connected with drugs"); Warner v. State, [Ms. 3 Div. 945, February 23, 1990] (Ala.Cr.App. 1990) (venire member "was recognized as 'well known' for 'suspicion of shoplifting' ").
The prosecutor's reason for striking juror Number 46 — prior service on a jury which returned a not guilty verdict — was also race neutral. E.g., Watkins v. State, 551 So.2d 421, 422
(Ala.Cr.App. 1988) (venire member "had previously served on a jury in a robbery case, where the defendant was found not guilty"); Smith v. State, 531 So.2d 1245, 1248 (Ala.Cr.App. 1987) (venire member "sat on a jury in a criminal case that returned a verdict of not guilty").
McLeod makes much of the facts that juror Number 46 stated on voir dire that he had previously served on a jury which returned a guilty verdict in a cocaine case and that the prosecutor did not ask any questions of this venire member regarding the marijuana case. We do not find either of these facts overly significant in this particular case. Whether juror Number 46 was simply mistaken[5] or did in fact serve on both a marijuana and a cocaine case, it is clear that the prosecutor had ample information in his possession prior to the voir dire to support his statement that the venire member had previously served on a marijuana case where the jury failed to convict. Although the absence of questions or meaningful questions on voir dire should be considered in determining whether a reason advanced by a prosecutor is merely a sham or pretext, Ex parteBranch, 526 So.2d at 624; Harrell v. State, 555 So.2d at 266, we do not read Branch and Harrell to require the prosecutor to engage in extensive voir dire questioning to determine whether a particular veniremember is actually lying or merely mistaken.
 "We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated.
 "In this case, the reasons given by the prosecutor for using his strikes to eliminate these [two] people were facially race neutral. The trial judge found them to be credible. No more is required under Batson. . . ."
Scales v. State, 539 So.2d 1074, 1075 (Ala. 1988). We therefore find no error in the trial judge's denial of McLeod's Batson
motion. *Page 1156 
 VIII
McLeod maintains that the trial court erred in refusing to permit him to obtain an answer when he questioned the members of the venire as to whether they had voted for Houston County Sheriff Lamar Haddon.
During voir dire, McLeod asked anyone who had voted for Sheriff Haddon to stand. It appears that a number of venire persons stood in response to this question. At that point, a juror asked whether it was "permissible for him to ask us that." McLeod stated that he was "entitled to know because he's a witness in my case, and if they thought enough to vote for him they must believe in him." The trial court, however, held that it was not a permissible question due to the fact that voting is conducted by secret ballot.
It is well settled that each party has the right, either directly or through the trial court, to question the jury venire regarding the qualification of or interest or bias on the part of members of the venire. Jennings v. State,513 So.2d 91, 94 (Ala.Cr.App. 1987). It is also clear, however, that this right to question the venire "is limited by propriety and pertinence" and "is exercised within the sound discretion of the trial court." McRee v. Woodward Iron Co., 279 Ala. 88, 91,182 So.2d 209, 211 (1966) (quoting New York Times Co. v.Sullivan, 273 Ala. 656, 676, 144 So.2d 25, 40 (1962), reversed on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686
(1964)). Furthermore, the questions must be reasonable under the circumstances of the case. See Griffin v. State,383 So.2d 873, 876 (Ala.Cr.App.), cert. denied, 383 So.2d 880 (Ala. 1980).
In general, "a juror cannot be required to answer any questions the answer to which would tend . . . to violate any legal right, and it is not error for the court to refuse to allow such questions to be asked." 50 C.J.S. Juries § 274 (1947) (footnotes omitted). Section 17-8-11, Ala. Code (1975), provides that "[e]very voter in Alabama shall have the right to vote a secret ballot, and that ballot shall be kept secret and inviolate." Requiring an answer to McLeod's question would have infringed upon the right of the venire members to maintain the secrecy of the ballot. Speer v. State, 130 Ark. 457, 460,198 S.W. 113, 114 (1917) ("the secrecy of the ballot is accorded electors in this state, and questions [as to whether they voted for or against defendant in his election to public office] would be a clear invasion of their right"). Cf. State v.Langendorfer, 389 So.2d 1271, 1274 (La. 1980) (finding no abuse of discretion where trial court limited defendant who sought to question venire about their support of the district attorney trying the case to the question of "whether prospective jurors had been actively involved in the campaign," as this question was "sufficient to identify those with a predisposition toward the State").
Moreover, Sheriff Hadden was called as a defense witness and was not even questioned by the prosecution. (See Part X below). We find no abuse of discretion in the trial court's action.
In support of his contention that he was entitled to have his question answered, McLeod has cited Tinsley v. State,507 So.2d 1004, 1007 (Ala.Cr.App. 1986), where the prosecuting attorney asked whether any members of the venire had voted for the defendant in "the last city council election." However, it does not appear that any objection was interposed to this question at trial and the propriety of the question was not at issue on appeal. On that basis, we distinguish Tinsley from the case at bar.
 IX
McLeod was indicted under Ala. Code § 13A-12-211 (1975). Consequently, the State was required to prove that McLeod "s[old], furnishe[d], g[ave] away, manufacture[d], deliver[ed] or distribute[d] a controlled substance." § 13A-12-211(a). McLeod asserts that the State failed to do so.
The State's primary witness was Robert Chambers, a drug task force agent with the Alabama Beverage Control Board. During the summer of 1988, Chambers was working undercover in conjunction with the *Page 1157 
Houston County sheriff's department. On the evening of June 11, Chambers sought the assistance of one LaFaye Hamilton in order to obtain "crack" cocaine. Ms. Hamilton directed Chambers to drive to a residence on Toad Street, where Chambers observed McLeod standing on the front porch. Chambers parked his vehicle across the street from this residence. He gave Ms. Hamilton two twenty-dollar bills, and she walked over to McLeod. After some conversation that Chambers could not hear, McLeod reached into his pocket, "pulled out what appeared to be a match box, and he gave [Ms. Hamilton] an item and she bought it." Ms. Hamilton then returned to the car and gave Chambers a "rock substance."
On the evening of June 15, Chambers attempted to purchase cocaine from one Charlotte Garlington. Ms. Garlington stated that she did not have any, but could "take [Chambers] to get it." Chambers and Ms. Garlington drove in Chambers' vehicle to Martin Homes Project, where they encountered McLeod. Ms. Garlington told McLeod that she and Chambers "wanted to get some rock." According to Chambers, McLeod "pulled a matchbook out of his pocket and he gave [Ms. Garlington] the rock substance, and she in turn gave it to me, and I gave him the money, two twenty dollar bills."
Chambers testified that he was driving on Toad Street on June 29 when he spotted McLeod. Chambers stopped his vehicle and told McLeod that he was "looking for a forty," meaning that he wished to purchase a "forty dollar rock cocaine." McLeod stated that "all he had left was one ten" and Chambers replied that he would buy that. McLeod then "reached down into his socks and he pulled out a piece of white tissue paper and took a rock substance out and gave it to [Chambers]." Chambers paid McLeod, then left.
On August 13, Chambers was again driving on Toad Street, when he observed McLeod sitting on the porch of the residence to which LaFaye Hamilton had directed him on June 11. Chambers pulled over in front of the residence and McLeod walked out to the car. Chambers stated that he was "looking for a forty." McLeod got into Chambers' vehicle and directed Chambers to drive around the block. While Chambers was doing so, McLeod "reached down into his socks [and] pulled out a piece of white napkin which contained rock substance." McLeod gave Chambers two pieces of this rock substance and stated, "I'm going to let you have a twenty and a thirty for forty dollars." Chambers gave McLeod two twenty-dollar bills and returned McLeod to the residence on Toad Street.
All of the rock substances procured from McLeod were subsequently determined to be rock or crack cocaine, a controlled substance. McLeod offered an alibi defense, calling two witnesses who testified that he was playing cards with them on the dates in question.
When a defendant challenges the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the State. Ex parte Hinton, 548 So.2d 562, 569 (Ala.), cert. denied, ___ U.S. ___, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). We find that the evidence was clearly sufficient to sustain McLeod's convictions. Cf. Blair v. State, 549 So.2d 112, 113
(Ala.Cr.App.), cert. denied, 549 So.2d 114 (Ala. 1988) (testimony of undercover officer who purchased cocaine sufficient to sustain conviction for sale of cocaine, even where contradicted by informant who was not paid the amount he had been promised); Tinsley v. State, 507 So.2d 1004
(Ala.Cr.App. 1986) (evidence sufficient to sustain conviction for sale of marijuana under Ala. Code § 20-2-70 (1975) where undercover agent testified that he had purchased marijuana from defendant). McLeod's presentation of an alibi defense simply presented a jury question. Jeffers v. State, 455 So.2d 201, 203
(Ala.Cr.App. 1984).
 X
McLeod argues that the trial court erred in curtailing his attempts "to cross-examine the state witnesses during his trial, concerning his civil suit [under 42 U.S.C. § 1983] pending in federal court *Page 1158 
against them." Appellant's brief at 33 (emphasis added).
McLeod first questioned Houston County Sheriff Lamar Hadden about the § 1983 action. Upon objection by the prosecutor, the trial court "limit[ed] any questions . . . concerning any lawsuits other than the fact that there is one pending, or two pending."
McLeod maintains that he was entitled to question Sheriff Hadden and other witnesses on this matter in order to show bias on their part. However, Sheriff Hadden and the other witnesses McLeod wished to question concerning the § 1983 action were called by McLeod, not by the state. McLeod did not call Sheriff Hadden or the other witnesses as adverse witnesses, see generally, Anderton v. State, 390 So.2d 1083, 1086
(Ala.Cr.App.), cert. denied, 390 So.2d 1087 (Ala. 1980), which would have allowed him " 'to examine the witness[es] by use of tools available to him on cross-examination including contradiction and impeachment,' " Patterson v. State,538 So.2d 44, 45 (Ala.Cr.App. 1988). Consequently, he was bound by the "general rule that a party may not impeach his own witness," C. Gamble, McElroy's Alabama Evidence § 165.01(6) (3d ed. 1977). "This rule precludes a party from impeaching his witness by showing . . . that the witness is biased in favor of the opposing party." Id. See also O'Rear v. Manchester Lumber Co.,6 Ala. App. 461, 470, 60 So. 462, 465 (1912) (no error in trial court's refusal to permit plaintiff to ask his own witness if witness was an employee of defendant lumber company as this "was clearly but an attempt on the part of plaintiff either to discredit his own witness, when plaintiff is not shown to have been entrapped into putting him on the stand, or to add credit to his own witness, when defendant had not in any way impeached him or attempted to do so").
 XI
Neither McLeod nor the State submitted any written requested charges prior to the trial court's oral instructions to the jury. At the conclusion of these instructions, McLeod stated:
 "I'd like for you to further instruct the jury that the defendant said — claimed that he could not have committed the crime because he was somewhere else when the crime was committed."
The trial court did not respond in any manner whatsoever to this request.
McLeod contends on appeal that the trial court erred in failing to give an alibi charge because he had presented evidence to support such a charge. Craig v. State,526 So.2d 644, 646 (Ala.Cr.App. 1988). Contrary to the State's assertion, the trial court's instruction to the jury that, in reaching a verdict, it was to consider all the evidence presented, "including the alibi witnesses which [the defendant] has presented," did not substantially cover the alibi defense. Compare Nickerson v. State, 283 Ala. 387, 391, 217 So.2d 536,539 (1969) (example of correct alibi charge); Allred v. State,390 So.2d 1109, 1112 (Ala.Cr.App.), cert. denied,390 So.2d 1114 (Ala. 1980) (same); Nolen v. State, 376 So.2d 1145, 1147
(Ala.Cr.App.), cert. denied, 376 So.2d 1148 (Ala. 1979) (same). However, we do not find McLeod's statement sufficient to apprise the trial court that this matter had been erroneously omitted from the charge. See Salazar v. State, 505 So.2d 1287,1289-90 (Ala.Cr.App. 1986). Compare Edwards v. State,570 So.2d 829 (Ala.Cr.App. 1990). Moreover, this issue was not properly preserved for our review since the trial court never ruled on the request. " 'The law in Alabama is well settled that a preliminary requirement in preserving appellate review consists of an objection and an adverse ruling.' Pinkard v. State,405 So.2d 411, 416-17 (Ala.Cr.App. 1981) (emphasis added)." Garnettv. State, 555 So.2d 1153, 1156 (Ala.Cr.App. 1989) (holding that issue of alleged error in trial court's oral instructions was not properly preserved where trial court never ruled on defendant's objection). Compare Salazar v. State,505 So.2d 1287, 1289 (Ala.Cr.App. 1986) ("we believe that proper objection was made to that portion of the jury instruction in question, and the trial court's overruling of appellant's objection is properly before us for review"). *Page 1159 
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Appellate counsel, Bobbie S. Crook, was originally appointed for this appeal and, in fact, filed a brief with this Court on October 2, 1989. Her motion to withdraw, which was based on McLeod's pro se request to the trial court to dismiss appellate counsel, was granted by this Court on December 4, 1989.
[2] We note that McLeod's trial did not take place until May 15-16, 1989.
[3] McLeod was convicted of unlawful distribution of cocaine in CC-88-756 in a trial held November 17, 1988. In an opinion released this date, we are remanding that case for further proceedings concerning McLeod's apparent self-representation at that trial. McLeod v. State, 574 So.2d 882, 884 (Ala.Cr.App. 1990).
[4] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).
[5] As the trial court observed, "Well, [Number 46] said a month and a half ago, and Mr. Binford [the prosecutor] identified it very accurately. "