On December 12, 2001, McGregory Ladale Riley was convicted of murder, a violation of § 13A-6-2(a)(1), Ala. Code 1975. On February 12, 2002, the trial court sentenced him to life in prison. On March 4, 2002, Riley filed a motion for a new trial, which was denied by operation of law on April 13, 2002, 60 days after the pronouncement of sentence. See Rule 24.4, Ala.R.Crim.P. This appeal followed. *Page 354 
The evidence adduced at trial revealed the following: On December 30, 2000, Riley and Jomika Williams, his girlfriend, were at her apartment after returning from her sister's house; they began to argue. Williams asked Riley to leave. Riley agreed to leave the apartment and took some of his clothes to his truck. When Riley reentered the apartment to retrieve another bag, he discovered Williams standing in the den with a knife. In response, Riley went to the kitchen to get a knife. Riley testified that he was afraid of Williams because she had threatened to kill him with a knife on several prior occasions. Williams swung the knife at Riley, who swung his knife at her and stabbed her. Riley dropped his knife on the floor, and he retrieved another one from the kitchen. Riley stabbed Williams in the chest, and she fell to the floor. Riley stabbed her again.
After stabbing Williams, Riley drove to a grocery store and bought a bottle of Tylenol. He returned to the apartment and swallowed 150 Tylenol pills in an apparent suicide attempt. When this suicide attempt failed, Riley again tried to kill himself by consuming antifreeze. This attempt also failed. The next morning when Riley awoke, he telephoned his sister and the police, stating that he had killed Williams. Police arrived at the apartment. They found the victim lying on the floor and Riley sitting on the sofa eating a piece of sausage.
Williams was found dead; a knife blade was protruding from her chest and she had suffered nine stab wounds. Dr. Arthur Wolf testified that three of the stab wounds were serious, and that any one of the three wounds could have caused her death. Four knives were recovered from the scene. Riley advances three arguments on appeal. We address each in turn.
 I.
Riley claims that the trial court erred when it denied his Batson v.Kentucky, 476 U.S. 79 (1986), motion. Specifically, he argues that the prosecutor improperly struck veniremember no. 4 and that the prosecutor's stated reasons for doing so were pretextual. Riley argues that "the State offered a highly suspect reason with no underlying race neutral basis." (Riley's Brief, 13.)
The record reflects that the prosecution used six of its nine peremptory strikes to exclude nonwhite veniremembers. After Riley's trial counsel entered a Batson objection alleging that the prosecutor's strikes were racially motivated, the trial court held that Riley had established a prima facie case of racial discrimination. The trial court then required the prosecutor to state his reasons for the strikes. The prosecutor gave the following reason for striking veniremember no. 4:
 "Is a black male who is the approximate age and size and even appearance of the Defendant. He's employed at Container Corporation. His wife is employed at the Department of Human Resources. When they reviewed our juror list, the Department of Human Resources suggested that we not use Mr. [C.] as a juror in a case that the State of Alabama was prosecuting."
(R. 92.)
The trial court asked the prosecutor if the contact person at the Department of Human Resources ("DHR") provided a reason for the suggestion. The prosecutor responded that the person at DHR did not state why he or she believed that the veniremember should not serve as a juror. Riley did not request further information regarding the DHR's suggestion. The trial court denied the Batson *Page 355 
challenge as to veniremember no. 4, but stated that it had strong reservations about whether the State's reasons for striking the veniremember were sufficient. Riley argues on appeal that the trial court erred by accepting the prosecutor's reason, which, Riley says, did not have a race-neutral underlying basis.
 "The party alleging racially discriminatory use of peremptory challenges bears the burden of establishing a prima facie case of discrimination. Ex parte Branch, 526 So.2d 609, 622 (Ala. 1987). Once a prima facie case has been established, a presumption is created that the peremptory challenges were used to discriminate against black jurors. Id. at 623. Where the prosecutor is required to explain his peremptory strikes, he or she must offer `"a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory. However, this showing need not rise to the level of a challenge for cause."' McLeod v. State, 581 So.2d 1144, 1155 (Ala.Cr.App. 1990), quoting Ex parte Branch, 526 So.2d at 623. (Emphasis in Branch; citation omitted.) Once the responding party has articulated a race-neutral reason or explanation for eliminating the challenged jurors, the moving party can offer evidence showing that the reason or explanation is merely a sham or pretext. Ex parte Branch, 526 So.2d at 624. When the trial court has followed this procedure, its determination will be overturned only if that determination is `clearly erroneous.' Id. at 625."
Burgess v. State, 811 So.2d 557, 572-73 (Ala.Crim.App. 1998), aff'd in pertinent part, rev'd in part on other grounds, 811 So.2d 617 (Ala. 2000).
 "Within the context of Batson, a `race-neutral' explanation `means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). `In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law.' Id. '[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within the trial judge's province."' Hernandez, 500 U.S. at 365, 111 S.Ct. at 1869."
Allen v. State, 659 So.2d 135, 147 (Ala.Crim.App. 1994). However, "the reasons given for striking a juror are not required to rise to the level justifying a challenge for cause." Pollard v.State, 549 So.2d 593, 596
(Ala.Crim.App. 1989), citing Ex parte Lynn, 543 So.2d 709 (Ala. 1988).
We acknowledge that "a prosecutor's exercise of a peremptory challenge of a black venireperson based solely upon the recommendation of a law enforcement officer is highly suspect. However, the underlying basis for the recommendation may supply a racially neutral reason for the exercise of a peremptory challenge." Robinson v. State, 560 So.2d 1130, 1133
(Ala.Crim.App. 1990). This Court has upheld as race-neutral the reasons given by the prosecutor for striking black members of the venire that were based upon information obtained from law-enforcement officers because that information supplied a racially neutral reason for a peremptory challenge. See Sistrunk v. State, 599 So.2d 87 (Ala.Crim.App. 1992); McLeod v. *Page 356 State, 581 So.2d 1144 (Ala.Crim.App. 1990); and Robinsonv. State, 560 So.2d 1130 (Ala.Crim.App. 1989).
Although the Department of Human Resources is not a law-enforcement agency, it is an agency that can provide prosecutors valuable information regarding potential jurors, including information regarding owed child support, elder abuse, child abuse, criminal history, and domestic violence. Quite often, the information DHR has will be confidential, thereby preventing full disclosure to the prosecutors and, in turn, to the trial court of the facts underlying DHR's juror recommendation. The confidentiality of this information will also inhibit the prosecutor's ability to question the prospective juror on the subject. See, e.g., Exparte Bird, 594 So.2d 676, 683 (Ala. 1991) ("[T]he failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination.") (citing Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987)).
The trial court is in the best position to evaluate the circumstances surrounding a peremptory strike, particularly in light of the fact that it has an insight to the prosecutor's state of mind based on demeanor and credibility. While it certainly would be preferable if a prosecutor could give at least a general explanation of the information supplied by DHR, sometimes that will be impossible because of the confidential nature of the information. It is preferable in those cases for the prosecutor to know that the information is confidential and to relay that fact to the trial judge, unlike in this case.
Nonetheless, although the prosecutor in this case stated that the information underlying DHR's recommendation was unknown, rather than that it could not be known because of its confidential nature, we find that the prosecutor's reasons for striking veniremember no. 4 were facially race-neutral. As the State points out, "`[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Purkett v. Elem, 514 U.S. 765, 768 (1995) (quotingHernandez v. New York, 500 U.S. 352, 360 (1991)). The trial court was satisfied that the prosecutor did not possess a discriminatory intent, and nothing in the record indicates otherwise.
Because the prosecutor's proffered reasons for striking veniremember no. 4 were facially race-neutral, the burden then shifted to Riley to show that the reasons were shams or pretextual. See Cox v. State,629 So.2d 670 (Ala. 1993) (citing Ex parte Branch, 526 So.2d 609 (Ala. 1987)). Riley did not offer any evidence indicating that the State's reasons or explanations were a sham or a pretext.
For the reasons stated above, we hold that there was no Batson
violation in this case; therefore, Riley's argument is without merit.
 II.
Riley argues that the trial court erred when it held that he had not established a prima facie case of gender discrimination in the way that the State used its peremptory strikes. At trial, defense counsel made aBatson motion. In addition to the challenge for alleged racial discrimination, defense counsel challenged the State's strikes on the basis of gender discrimination, noting that the State used six of its nine strikes to remove men from the jury. "Batson was extended by J.E.B.v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), to prohibit gender-based discrimination in jury selection." Proctor v. Cityof Prattville, 830 So.2d 38, *Page 357 
43-44 (Ala.Crim.App. 2001). The trial court held that Riley had made a prima facie case and required the State to give the reasons for striking the veniremembers. After the State provided its reasons for the strikes, the trial court denied Riley's Batson motion. Thus, Riley's argument that the trial court erred when it did not require the State to supply gender-neutral explanations for its peremptory strikes is without merit.
 III.
Riley contends that the trial court erred when it refused to give requested jury charge number one. Specifically, he claims that he was entitled to charge the jury on his theory of the case and that the requested charge was a correct statement of law and supported by the evidence. Riley's requested charge stated the following:
 "It is the theory of McGregory Riley that he is not guilty of any criminal offense in this case. Mr. Riley asserts that the death of Jomika Williams was a matter of self-defense.
 "Mr. Riley has submitted evidence in his defense through his testimony, through the testimony of other witness and through cross-examination of the State's witnesses that Jomika Williams was a person of violent character, who had previously threatened to kill Mr. Riley and had pulled a knife on him on more than one occasion. It is his theory that during an argument on December 30, 2000, Jomika Williams pulled a knife and tried to stab Mr. Riley. Mr. Riley maintains that he honestly believed that Jomika Williams was about to use deadly physical force upon him and that he had a need to defend himself.
 "Mr. Riley does not have the burden of proving that he honestly believed that the death of Jomika Williams was a matter of self-defense. It is the prosecution's burden to prove beyond a reasonable doubt that Mr. Riley did not have such an honest belief. If you have a reasonable doubt whether the prosecution met the burden of disproving an honest belief in self-defense, you must resolve that doubt in favor of Mr. Riley and find that he honestly believed that the killing of Jomika Williams was committed in self-defense.
 "Mr. Riley does not have the burden of proving that his belief in the need to defend was reasonably held. It is the prosecution's burden to prove beyond a reasonable doubt that the belief was unreasonably held.
 "Under Alabama law, before you could find Mr. Riley guilty of murder or any lesser-included offense in this case, the State must prove to each and every one of you, each and every one of the elements of murder and any lesser-included offense as I have already advised you.
 "If each and every one of you is convinced beyond a reasonable doubt of each and all the elements of the crime charged or any lesser-included offense then you should find Mr. Riley guilty of whichever charge you believe has been proven. Such a finding of guilty means also that the State has disproved beyond a reasonable doubt Mr. Riley's denial of the charge and claim of self-defense. However, if the State has failed to prove to each and every one of you any element of the crime charged or any lesser-included offense(s) or that the State has failed to disprove beyond a reasonable doubt that Mr. Riley acted in self-defense, you should acquit him."
(C. 66.) (Emphasis added.)
This Court has stated:
 "`"A trial court has broad discretion in formulating its jury instructions, provid[ed] *Page 358 
they are an accurate reflection of the law and facts of the case."' Although it is well settled that '[a] defendant is entitled to have the trial court instruct the jury on his theory of defense,' it is equally well established that '[t]he trial judge may refuse to give a requested jury charge when the charge is either fairly and substantially covered by the trial judge's oral charge or is confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law.'"
Reeves v. State, 807 So.2d 18, 41 (Ala.Crim.App. 2000) (citations omitted.)
The emphasized portion of Riley's requested charge gave the jury a summary of evidence in a light favorable to the defense. Under Alabama law, judges cannot comment on the evidence. Cameron v. State, 615 So.2d 121
(Ala.Crim.App. 1992). Furthermore, the Alabama Supreme Court has held that a one-sided summary of the evidence by the trial court is a forbidden comment on the evidence. Ex parte Brown, 581 So.2d 436
(Ala. 1991). Because it would have been improper to give this charge, the trial court's decision not to read this charge to the jury was not reversible error.
Additionally, although portions of Riley's requested charge contained a correct statement of law, the trial judge properly refused the charge because the charge was substantially covered by the trial judge's oral charge. Therefore, the trial court did not abuse its discretion in refusing the requested jury charge. See Freeman v. State, 722 So.2d 806
(Ala.Crim.App. 1998).
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur. *Page 1138