BURKE, Judge.
Ellis Andrei Diggs appeals his conviction for the intentional murder of Garry Blackwell, see § 13A-6-2(a)(l), Ala. Code 1975, and his resulting sentence, as a habitual felony offender, to life in prison without the possibility of parole. Diggs had previously been convicted of the intentional murder of Blackwell; however, in Diggs v. State, 168 So.3d 156 (Ala.Crim.App.2014) (“Diggs I ”), this Court reversed that conviction because the trial court failed to charge the jury on self-defense. After we reversed that conviction and remanded the case to the trial court, Diggs was retried and convicted again.

Facts

In the present case, the State presented evidence indicating the following. In February 2012, Blackwell was using a house on Haardt Drive in Montgomery to operate a nightclub that provided female dancers, strippers, and prostitutes to paying customers. Chasity Bowen was Diggs’s longtime girlfriend, and she worked for Blackwell as a dancer and stripper. At around 3:00 or 4:00 a.m. on February 4, 2012, while inside the nightclub, Bowen and Blackwell got into a heated argument that escalated into their using foul language and spitting on one another. . Ultimately, Blackwell physically restrained Bowen and carried her outside the nightclub. Bowen, testified that, after being removed from the nightclub, she told Blackwell that “[my boyfriend is] going to beat you up, you.know, your ass.” According to Bowen, Blackwell responded: “I don’t care about nobody.” (R. 244.) Bowen then left the nightclub and went home, where she woke Diggs from sleeping. Bowen told Diggs what Blackwell had done. Bowen testified that Diggs responded, “damn, he fucked up.” (R. 245.) Then, Diggs and his brother, Eric Johnson, left the house and went to Blackwell’s nightclub.
Diggs and Johnson approached Blackwell outside the nightclub. Initially, Diggs and Blackwell were having a calm conversation, but, within five minutes, the situation escalated into a heated argument. During the argument, Diggs pulled a handgun out of his waistband and shot Blackwell multiple times. Charles Lewis, who worked at the nightclub and was an eyewitness to the incident, testified that Blackwell was unarmed at the time of the shooting. Sheena Bullock, who was also at the nightclub at the time of the shooting, testified that she never saw Blackwell with a weapon on the night of the incident. Bullock further testified that she “saw the imprint of a handgun in [Johnson’s] pocket.” (R. 137.) Daryl Ball, who was also an eyewitness to the incident, testified that he never saw Blackwell with a weapon.
Fifteen fired cartridge casings were recovered from the scene of the shooting. No guns were recovered. Stephanie Luehr Dees, a forensic scientist and a section chief of the Alabama Department *122 of Forensic Sciences’ Mobile Firearms and Toolmarks Identification Section, tested the cartridge casings and determined that they were fired from “at least 2 guns and possibly 3.” (R. 291.)
Steven Dunton, the medical examiner who performed the autopsy on Blackwell’s body, testified that Blackwell suffered five gunshot wounds. Two of those wounds involved Blackwell’s torso, one grazed his left elbow, one went through the back of his right calf, and one: went through his left foot. The two gunshot wounds to Blackwell’s torso caused internal injuries and produced bleeding that resulted in his death. ■
Johnson testified that, after he and Diggs approached Blackwell outside the nightclub, Diggs and Blackwell got into a heated argument. According to Johnson, Blackwell stated: “I ain’t got to explain shit; this is business; I run this shit; as a matter of fact, fuck- you.” (R. 378.) Then, according to Johnson, Blackwell pulled out a gun and started firing it. Johnson testified that he ran away when Blackwell started firing the gun. Johnson further testified that he did not have a gun on the night of the shooting.
Diggs testified in his own defense at trial. Diggs testified that he had previously been convicted of third-degree burglary, theft of property, possession of a controlled substance, and giving a false name to the police. Diggs further testified that he was not supposed to have a gun. Diggs testified that, on the night of the incident, Bowen told him that Blackwell had hit her and had spit on her. Diggs further testified that he did not know whether to believe Bowen, so he decided to go to the nightclub and talk to Blackwell. According to Diggs, Bowen told him that Blackwell threatened to “bury” Diggs if he came to the nightclub. (R. 408.) Diggs stated that he got a loaded handgun from a person in the neighborhood and took the gun with him to the. nightclub. Diggs testified that Johnson did not have a gun when they went to the nightclub. According to Diggs, when he approached Blackwell at the nightclub, Diggs calmly,asked Blackwell about what had happened between him and Bowen earlier. Then, according to Diggs, the following occurred:
“[Blackwell] said, she spit on me and he spit back- on the bitch. He said he didn’t have to explain shit; this is his shit. He upped the gun, and he started shooting. I started shooting back in self-defense. I got seared, so I was shooting back and running for my life.”
(R. 413-14.) Diggs testified that he fired his gun “because [he] was scared for [his] life.” Diggs further testified:
“When I shot, I didn’t even aim. I don’t even see how I hit him like that. I never even aimed. I just got scared and started shooting.”
(R. 417.)

Discussion

On appeal, Diggs argues that “the trial court erred and deprived Diggs of a fair trial when it refused Diggs’s request for a jury instruction on the right of a felon to use a firearm in self-defense, because Diggs presented evidence that he used the firearm against the immediate need to defend his life.” (Diggs’s brief, at 37.) Further, Diggs argues that his “requested jury instruction was not substantially covered by the trial court’s oral charge” and that his requested jury instruction “was the ‘law of the case,’ as established by this Court Diggs I.” (Diggs’s brief, at 37 and 41.)
Throughout his briefs on appeal, Diggs conflates the right to self-defense under § 13A-3-23(a), Ala.Code 1975, and the separate right to stand one’s ground under *123 § 13A-3-23(b), Ala,Code 1975. Diggs’s arguments are based on his mistaken belief that his possession of a firearm did not constitute “unlawful activity” under § 13A-3-23(b), if he used the firearm in self-defense under § 13A-3-23(a).
Section 13A-3-23, Ala.Code 1975, provides, in pertinent part:
“(a) A person, is justified in using physical force ’ upon another person in order to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he or she may use a degree of force which , he or she reasonably believes to be necessary for the purpose. . A person may use deadly physical force, and is legally presumed to be justified in using deadly physical force in self-defense or the defense of another person pursuant to subdivision (4), if the person reasonably believes that another person is:
“(1) Using or about to use unlawful deadly physical force.
[[Image here]]
. “(b) A person who is justified under subsection (a) in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground.
“(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force if:
“(1) With intent to cause physical injury or death to another person, he or she provoked the use of unlawful physical force by such other person.
“(2) He or she was the initial aggressor, except that his or her use of physical force upon another person under the circumstances is justifiable if he or she withdraws from the encounter and effectively communicates to the other person his or her intent to do so,'but the latter person nevertheless continues or threatens the use of unlawful physical force.
“(3) The physical force involved was the product of a combat by agreement not specifically authorized by law.”
In Diggs I, this Court held that because Diggs presented evidence in support of his self-defense claim, the trial court erred when it refused to instruct the jury on self-defense under § 13A-3-23(a)(l), Ala.Code 1975. Accordingly, we reversed Diggs’s conviction and remanded the case for a new trial.- There was also language' in Diggs I that appeared to imply that Diggs might also be entitled to an additional instruction under § 13A-3-23(b), Ala.Code 1975, informing the jury that he had no duty to retreat. However, in Fuller v. State, [Ms. CR-14-0368, December 18, 2015] — So.3d - (Ala.Crim.App.2015), an opinion that this Court is releasing the same day as this opinion, this Court recognizes that “the language in Diggs [I] concerning the defendant’s duty to retreat was unnecessary and, thus, was merely dicta.” —— So.3dat .
Furthermore, in Fuller, ' this Court recognizes the distinction between the right to self-defense under § 13A-3-23(a) and the separate right to stand one’s ground under § 13A-3-23(b).' In Fuller, this Court holds that “when a person who is otherwise unable to lawfully possess a weapon finds himself or herself in imminent peril of great bodily harm, he or she should be able to lawfully take possession of a weapon at that moment and use it for a period' no longer than is necessary or apparently necessary to use it in self-defense.” Fuller, — So.3d at -. However, we hold in Fuller, “a person should not be able to unlawfully take possession of a weapon well before an altercation *124 occurs, enter circumstances that may result in a violent confrontation, use that weapon in a violent altercation, and then avail himself or herself of the ‘no-duty-to-retreat’ right created by § 13A-3-23(b).” Fuller, — So.3d at -. Further, in Fuller we hold:
“Under [Ex parte] Taylor, [636 So.2d 1246 (Ala.1993),] if a person who cannot otherwise lawfully possess a weapon arms himself or herself in self-defense, he or she can raise the defense of self-defense to a charge that he or she unlawfully possessed a weapon. As Taylor held, unlawful possession of a firearm is not a strict-liability offense. However, Taylor did not consider whether such a person has a duty to retreat if possible, and there is no indication in § 13A-3-23 that the legislature meant to exempt such a person from the duty under the common law to retreat if possible. In fact, the opposite is true. The legislature explicitly excluded people ‘engaged in an unlawful activity’ from the newly established ‘no-duty-to-retreat’ right. Frankly, we see the wisdom in not allowing violent felons to proactively arm themselves and then avail themselves of the stand-your-ground law when they enter a situation in which violence is likely and use the weapon that they are unlawfully possessing to take human life. A felon who is barred from possessing a gun should be able to act in self-defense, but he or she should also have to retreat if possible.
“If a person enters a situation engaged in an unlawful activity that in anyway relates to or contributes to the situation, that person cannot avail himself or herself of the ‘no-duty-to-retreat’ right created by § 13A-3~23(b).”
Fuller, — So.3d at -.
In the present case, the trial court instructed the jury, in pertinent part, as follows:
“And, also, what has been raised in this case is the issue of self-defense. And this is what the law says about self-defense.
“Alabama law permits the use of force, even deadly force, in self-defense. Self-defense is a complete defense to the charge in this case. If you find Ellis Diggs acted in self-defense, then you must find him not guilty.
“A person may use physical force upon another person in order to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person and may use a degree of force which he reasonably believes to be necessary for that purpose.
“A person may use deadly physical force in order to defend himself if he reasonably believes that the other person is using or about to use unlawful deadly physical force.
“Deadly physical force is force which under the circumstances in which it is used is readily capable of causing death or serious physical injury.
“A reasonable belief is a belief formed in reliance upon reasonable appearances. It is a belief not formed recklessly or negligently. A test for reasonableness is not whether the defendant was correct in his belief but whether the belief was reasonable under the circumstances.
“In determining whether the defendant acted in self-defense, you should determine whether the defendant reasonably believed the use of force was necessary under the circumstances. The defendant is not justified in using deadly physical force upon another person if it reasonably appears or the defendant knows that he can avoid the *125 necessity of using such force with complete safety by retreating. But a person who is justified in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground.
“The defendant is not justified in using deadly physical force against another person if with the intent to cause the death of another person, he provoked the use of deadly force by that person, or the defendant was the initial aggressor, or the death occurred as a product of mutual combat.
“The defendant does not have the burden of proving that he acted in self-defense. To the contrary, once self-defense becomes an issue, the State has the burden of proving the accused did not act in self-defense in the sense the State must prove a prima facie case of unjustified homicide.
“In considering a claim of self-defense, there is a difference between merely starting a controversy and being the initial aggressor.
“An aggressor is in an altercation involving physical force.
“Controversy is defined as discussion marked with expression of opposing views, a dispute.
“Aggressor is defined as one that commits or practices aggression.
“And aggression is defined as a forceful action or procedure as an unprovoked act, especially when intended to dominate or master.”
(R. 508-11.)
After the trial court finished instructing the jury, Diggs’s attorney objected, as follows:
‘Tour Honor, with respect to Defendant’s Requested Jury Charge Number 10, that charge specifically states that a felon is not deprived of the right to use a firearm against the immediate need to defend his life. When a felon is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense or in defense of others. In such a situation, justification is a defense to the charge of felon in possession of a firearm. Diggs [I].
“Judge, I am sure the Court is well aware of this case. We would just ask and put on the record that we believe the statement of the law that has been put forth by the Alabama Court of Criminal Appeals in [Diggs /] is the law of the case, and under that doctrine that law should govern. What our concern may be is if jurors retire and begin deliberating and have an issue about whether Mr. Diggs was committing unlawful activity due to the fact he has testified that he had previous felony convictions and that it is commonly known that felons may not possess a firearm, if jurors deliberate and are caught up on the issue of whether that constitutes an unlawful activity pursuant to that phrase as has been defined in the Court’s instructions, that may result in certain jurors not being able to correctly apply the law to the facts of this case.
“Accordingly, we ask that instruction be given, and if not the objection be preserved.”
(R. 514-15.) The trial court responded: “Objections noted.” (R. 516.)
This Court has stated:
“ ‘ “ ‘A trial court has broad discretion in formulating its jury instructions, provid[ed] they are an accurate reflection of the law and facts of the case.’ ” Although it is well settled that “[a] defendant is entitled to have the trial court instruct the jury on his *126 theory of defense,” it is equally well established that “[t]he trial judge may refuse to give a requested jury charge when the charge is either fairly and substantially covered by the trial judge’s oral charge or is confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement, of the law.” ’
“Reeves v. State, 807 So.2d 18, 41 (Ala.Crim.App.2000) (citations omitted.)”
Riley v. State, 875 So.2d 352, 357-r58 (Ala. Crim.App.2003). -
In the present case, the trial court’s instructions followed the language of § 13A-3-23 and followed this Court’s holding in Diggs I. The trial court’s instructions are also consistent with this Court’s holding in Fuller. The trial court properly instructed the jury concerning self-defense and concerning Diggs’s duty to retreat. Nothing in the trial court’s instructions stated that Diggs could not take' possession of a weapon to use in- self-defense. Furthermore, the trial court was not required to instruct the jury that Diggs was not engaged in unlawful activity ■ under § 13A-3-23(b) or that Diggs did not have a duty retreat if he used his firearm in self-defense. In fact, based on Fuller, such an instruction would have been incorrect. Therefore, the trial court did not err or deprive Diggs of a fair trial when it refused to give his requested jury instruction.

Conclusion

Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.