Rel: August 23, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

_____

### CR-2022-1342

_____

**Corey Lee Walton**

**v.**

**State of Alabama**

**Appeal from Tuscaloosa Circuit Court**
**(CC-22-30)**

McCOOL, Judge.

AFFIRMED BY UNPUBLISHED MEMORANDUM.

Windom, P.J., and Kellum and Minor, JJ., concur. Cole, J., dissents, with opinion.

COLE, Judge, dissenting.

Because I believe that the trial court erred by admitting Walton's youthful-offender adjudications into evidence, I respectfully dissent.

Before Walton's trial began, he filed a motion in limine requesting that the prosecution be prohibited from offering any character evidence pursuant to Rule 404(b), Ala. R. Evid. In particular, he asserted that the trial court should "preclude any mention or evidence of [Walton's] prior conviction under youthful offender." (R. 195.) Immediately before jury selection, this motion was argued by counsel, and the prosecution agreed that youthful-offender convictions are generally not admissible but acknowledged that the "door can be opened" for their admissibility. (R. 33.) During voir dire of the prospective jurors, Walton stated that "[t]his is a stand your ground state, meaning you don't even have to run, you can stand your ground; okay? Anybody got a problem with that? Anybody got a problem with the right to defend yourself, to defend yourself with a gun?" (R. 151.) Neither the "stand your ground" law nor the duty to retreat was ever mentioned again to the jury by defense counsel. During the trial, the State asserted that Walton had opened the door to the introduction of Walton's youthful-offender adjudication by

2

raising a "stand your ground" defense. Walton argued that he had not raised the issue of when an individual had the right to stand his or her ground, but he agreed that the trial court could "make it known to the jury that [Walton] was not supposed to carry a gun pursuant to a court order, that [the court] could do it without putting in these charges of attempted murder, discharging a gun into an occupied building, distribution, robbery without putting this to the jury." (R. 435.) He argued that "its probative value is not outweighed by prejudicial effects" and that it would improperly "taint[] the jury against him." (R. 435.) The trial court admitted State's Exhibit 29 over Walton's objection, but Walton asked if "the Court's ruling would be the same on State's Exhibit 29 if we would agree with the Court that he had a duty to retreat and not go the stand your ground route but self-defense route?" (R. 426, 435.) The trial court said it would "consider that." (R. 437.)

The trial court later noted that Walton had filed a pretrial motion alleging that he was entitled to immunity based upon Alabama's "stand your ground" law, that Walton had raised the "stand your ground" issue during voir dire of the jury and during his opening statement, and that "for four or five years … this has been a self-defense stand your ground

3

case." (R. 528.) Walton seemed to concede that he had mentioned "stand your ground" during voir dire, but he correctly argued that otherwise "[t]here was no point in opening arguments or in the course of this trial we've talked about stand your ground." (R. 523.) The trial court agreed with the State's argument that Walton's youthful-offender adjudication, which precluded Walton from possessing a firearm, was relevant to the issue whether Walton had a duty to retreat from a confrontation or whether he was permitted to stand his ground without retreating. The trial court also agreed that Walton had raised the defense that he could stand his ground; therefore, he had opened the door to the admission of the youthful-offender convictions. Walton acknowledged that he was arguing that he acted in self-defense and "plan[ned] on going down the road on self-defense," but that they were not arguing "stand your ground." (R. 523-24.) He reiterated that there was "no need for [the youthful-offender adjudication] to come in, especially with we're not even going down the realm of stand your ground. We're only going down the realm of self-defense. And his duty to retreat, that's -- we have no problem with that." (R. 524.) The trial court essentially held that Walton could not change his strategy at that point, that the youthful-offender

4

adjudication would be admitted into evidence, and that the jury would be "charged on the duty to retreat." (R. 525, 527, 529.)

The adjudications were admitted into evidence, and the trial court gave the jury a "limiting instruction" that the adjudications were not to be considered as "character evidence" or used to infer that Walton was guilty in this case, that they could be considered only as they "relate[] to [Walton's] possession of a firearm. That's it. Whether he rightfully had a firearm." (R. 563-64.) The youthful-offender adjudications notified the jury that Walton had been ordered not to possess a firearm, but it also notified the jury that, less than two months before the incident in question occurred, he had been adjudicated guilty of two counts of attempted murder, one count of first-degree robbery, one count of shooting into an occupied vehicle, one count of distribution of a controlled substance, and that two unknown charges had been dismissed pursuant to a plea agreement with the State. (C. 310-14.)

I agree with the unpublished memorandum that Walton's youthful-offender adjudications were relevant to the issue whether Walton had the duty to retreat during the shooting in this case, but his possession of a firearm did not preclude him from asserting that his actions were in self-

5

defense. The memorandum correctly cites the applicable law, including the general principle that, "[i]f the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing bad character, then proof of such other act is admissible." Horton v. State, 217 So. 3d 27, 47 (Ala. Crim. App. 2016).

> "However, the fact that evidence of a prior bad act may fit into one of the[] exceptions [outlined in Rule 404(b), Ala. R. Evid.,] will not alone justify its admission. Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects."

Floyd v. State, 289 So. 3d 337, 398 (Ala. Crim. App. 2017) (emphasis added; internal quotations and citations omitted).

First, I question whether Walton's comment during voir dire opened the door for the trial court to consider whether his youthful-offender adjudications were admissible. Walton did not tell the potential jurors that he did or did not have a right to stand his ground during the incident in question. He merely told the jury panel that Alabama has a "stand your ground" law and asked the potential jurors if they believed a person

6

should have the right to defend themselves with a gun. Although, under the appropriate circumstances, a party can open the door to the admission of evidence during voir dire of potential jurors, I question whether Walton's limited question opened to door to this issue. The trial court had conditionally granted Walton's motion in limine regarding his youthful-offender adjudications; therefore, the evidence of his prior offenses would not have been admitted for the jury's consideration if the trial court did not believe that the defense had sufficiently raised this issue by his comment during voir dire.

Even if Walton did open the door and made his youthful-offender adjudications relevant, admission of the adjudications was not necessary to the State's case, and they were unduly and unfairly prejudicial to Walton. Neither this Court in its memorandum nor the State asserts that Walton's youthful-offender adjudications were admissible for any of the reasons specifically outlined in Rule 404(b), Ala. R. Evid. The sole reason proffered for their admissibility was to establish that Walton had a duty to retreat if he could do so safely. "[T]his Court recognizes the distinction between the right to self-defense under § 13A-3-23(a)[, Ala. Code 1975,] and the separate right to stand one's ground under § 13A-3-

23(b)[, Ala. Code 1975,] " Diggs v. State, 203 So. 3d 120, 123 (Ala. Crim. App. 2015), and Walton attempted to make this distinction to the trial court when he argued that his youthful-offender adjudications were inadmissible. Walton agreed that he would not argue that he had the right to stand his ground, that the trial court could instruct the jury that he had a duty to retreat, and that the trial court could instruct that jury that Walton did not have the right to stand his ground because he had been ordered not to possess a firearm. Walton merely wanted the details of the offenses underlying the youthful-offender adjudications to be withheld from the jury. Clearly, the trial court would have instructed the jury, as was frequently done before the law on self-defense was amended to include the no-duty-to-retreat language, that Walton "is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety." § 13A-3-23(b), Ala. Code 1975. As Walton suggested, the trial court also could have notified the jury, without divulging details of the underlying allegations, that, "if the defendant claiming self-defense was, at the time of the shooting, a convicted felon in possession of a firearm [or, in this case, that a court had ordered that

he not possess a firearm], he has a duty to retreat because he is engaged in 'unlawful activity' and is not 'free from fault.'" Wallace v. State, 216 So. 3d 464, 468 (Ala. Crim. App. 2015). In fact, the trial court did instruct the jury that Walton was required to retreat, if he could do so safely, without mentioning Walton's youthful-offender adjudications. The trial court instructed the jury as follows:

> "A defendant is not justified in using deadly physical force upon another person and a defendant cannot prevail on the issue of self-defense if he reasonably -- if it reasonably appears or the defendant knows that he can avoid the necessity of using such force with complete safety by retreating."

(R. 953.) The trial court also reiterated to the jury during the final instructions that Walton's youthful-offender adjudications could be considered only "as to the legality of possessing a firearm," but it did not explain why it mattered that Walton did not legally possess the firearm, nor did the court explain to the jury that the adjudications were in any way related to the issue of an individual's duty to retreat. (R. 953-54.) Because there was no argument that the previous offenses were relevant for one of the reasons outlined in Rule 404(b), and the trial court instructed the jury that Walton could not prevail on a self-defense claim if he could safely retreat from the situation, the nature of the allegations

underlying the youthful-offender adjudication was irrelevant and unnecessary to the State's case. Evidence of prior bad acts is not admissible unless the evidence is "reasonably necessary to the state's case," Horton, 217 So. 3d 46; therefore, this evidence was not admissible.

In addition to the State needing to establish that the prior-act evidence was "necessary," the State also needed to show that its probative value outweighed the prejudicial effect of the evidence. The exclusionary rule outlined in Rule 404(a)

> "is simply an application of the character rule which forbids the State to prove the accused's bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence or prior crimes has an almost irreversible impact upon the minds of jurors."

Bailey v. State, 75 So. 3d 171, 184 (Ala. Crim. App. 2011) (internal quotes and citations omitted). The memorandum correctly notes that the trial court gave a curative instruction in an effort to limit the prejudice suffered by Walton, but the State clearly did not heed the trial court's instruction when it gave its closing argument.

The State repeatedly reminded the jury about the nature of Walton's prior offenses and how he had "looked at this judge in the eye,

10

and he promised" not to have a firearm. (R. 933.) Moreover, the prosecutor never discussed the significance of the prior adjudications and how they related to the issue of the lack of a duty to retreat. This is understandable because the defense did not argue that he had the right to stand his ground. Rather, Walton argued only that he acted in self-defense, and this argument was not altered by the fact that he could not legally possess a firearm. The evidence of Walton's prior violent acts, which were similar to the offense charged in this case, had an "irreversible impact" on the jury and should not have been admitted into evidence. This adverse impact is particularly likely because even the State's evidence supported Walton's common-law claim of self-defense. The State's witnesses testified that Walton was essentially forced to leave by a large group, that he was "encircled" and "essentially trapped" at the bottom of a hill, that the group was "trying to hurt [Walton and Chuco]," that Chuco "fainted," and that Walton was tackled and "[t]hat's when the gunshot went off." Even the investigator testified that the gun was fired "close to the ground." Thus, an overwhelming amount of evidence was presented, by the State no less, that supported Walton's argument that

11

he acted in self-defense.  This evidence was likely overcome by the details of Walton's youthful-offender adjudications.

Finally, I disagree with the assertion in the memorandum that "at the time the [youthful-offender] adjudications were admitted, it appeared that whether Walton was entitled to stand your ground or had a duty to retreat was going to be a factual issue for the jury to resolve."  As previously noted, Walton had never asserted to the jury that he had the right to stand his ground; he informed the trial court that he would not argue that he had the right to stand his ground; and he agreed that the trial court could instruct the jury that he did not have the right to stand his ground.  This issue was resolved before the exhibit that contained Walton's youthful-offender adjudications was submitted to the jury.

Because evidence of Walton's youthful-offender adjudications was both unnecessary for the State to prove its case and was unduly prejudicial, I would reverse Walton's conviction for attempted murder and remand this matter to circuit court for a new trial.